IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


UNITED STATES OF AMERICA,            3:11-CR-00028-BR

       Plaintiff,

                                OPINION AND ORDER

v.

RICHARD ROOSEVELT BAHR, JR.,

       Defendant.


**S. AMANDA MARSHALL**
United States Attorney
**GARY Y. SUSSMAN**
Assistant United States Attorney
1000 S.W. Third, Suite 600
Portland, OR  97204
(503) 727-1012

       Attorneys for Plaintiff

**STEVEN T. WAX**
Federal Public Defender
**THOMAS J. HESTER**
Assistant Federal Defender
101 S.W. Main Street
Suite 1700
Portland, OR  97201
(503) 326-2123

       Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Richard Roosevelt Bahr's Motion (#51) to Exclude Testimony of Sandra Brown and to Strike Material from the Presentence Investigation Report.  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion.

## PROCEDURAL BACKGROUND

On January 26, 2011, Defendant was charged with two counts of Knowingly and Unlawfully Possessing Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2253. On August 12, 2011, Defendant pled guilty to both counts of the Indictment.

On March 21, 2012, the Court held a sentencing hearing at which Defendant objected to the Court's consideration in fashioning a reasonable sentence of statements made by Defendant during a May 2009 polygraph examination taken in the course of the state post-prison supervision term that followed Defendant's release from prison after a rape conviction.  The Court directed the parties to brief the issue.

On April 11, 2012, Defendant filed a Motion to Suppress in which he sought an order suppressing statements from Defendant's May 2009 polygraph on "which the Government's sentencing recommendation is partially predicated" on the ground that the

Fifth Amendment bars consideration of those statements at sentencing.

On April 16, 2012, the government filed a Response in which it asserted, among other things, that (1) the Court could consider Defendant's statements in his May 2009 polygraph at sentencing and (2) even if the Court did not consider Defendant's May 2009 polygraph statements, the Court should apply a five-level guidelines enhancement based on admissions that Defendant made to his mother, Sandra Brown, about his sexual abuse and/or exploitation of minors.

On April 23, 2012, Defendant filed a Reply in which he requested the Court also to suppress the statements he made to Brown about his sexual abuse and/or exploitation of minors.

On April 23, 2012, the Court took testimony from Brown and heard oral argument on Defendant's Motion.

On May 24, 2012, the Court issued an Opinion and Order in which it denied Defendant's Motion to Suppress.

On June 5, 2012, the Court sentenced Defendant to 240 months imprisonment on each of Counts 1 and 2 to be served concurrently and to a life term of supervised release.  On June 25, 2012, Defendant appealed the Court's denial of his Motion to Suppress and his sentence.

On January 23, 2014, the Ninth Circuit issued an Opinion and Mandate in which it vacated Defendant's sentence on the ground

that "the government . . . compelled [Defendant's] [May 2009 lie-detector] treatment disclosures in violation of the Fifth Amendment, and the district court should not have considered the information." *United States v. Bahr*, 730 F.3d 963, 967 (9th Cir. 2013). The Ninth Circuit remanded the matter to this Court for resentencing. The Ninth Circuit specifically noted, however, that it "express[ed] no opinion regarding whether Brown's testimony was admissible evidence in determining a valid sentence" and "le[ft] the issue of the admissibility of Brown's testimony for the district court on remand." *Id*. The Ninth Circuit also noted "[i]f any revisions or redactions to the [Presentence Report] PSR must be made in light of our ruling, the district court should have the first opportunity to address those alterations." *Id*.

On June 16, 2014, Defendant filed a Motion to Exclude Testimony of Sandra Brown and to Strike Material from the Presentence Investigation Report.

On July 8, 2014, the Court heard oral argument on Defendant's Motion and directed the parties to file supplemental briefing.

## STANDARDS

Defendant moves to exclude the statements made to Brown on the ground that consideration of those statements for purposes of

4 - OPINION AND ORDER

sentencing violates Defendant's rights under the Fifth Amendment
to the United States Constitution.

The Fifth Amendment provides in pertinent part that no
person "shall be compelled in any criminal case to be a witness
against himself." U.S. Const. amend. V. "It has long been held
that this prohibition not only permits a person to refuse to
testify against himself at a criminal trial in which he is a
defendant, but also 'privileges him not to answer official
questions put to him in any other proceeding, civil or criminal,
formal or informal, where the answers might incriminate him in
future criminal proceedings.'" *Minn. v. Murphy*, 465 U.S. 420,
426 (1984)(quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)).

> In all such proceedings, a witness protected by
> the privilege may rightfully refuse to answer
> unless and until he is protected at least against
> the use of his compelled answers and evidence
> derived therefrom in any subsequent criminal case
> in which he is a defendant. . . . Absent such
> protection, if he is nevertheless compelled to
> answer, his answers are inadmissible against him
> in a later criminal prosecution.

*Id*. (quotation omitted).

In addition, "[a] defendant does not lose this protection by
reason of his conviction of a crime; notwithstanding that a
defendant is imprisoned or on probation at the time he makes
incriminating statements, if those statements are compelled they
are inadmissible in a subsequent trial for a crime other than
that for which he has been convicted." *Id*. (citing *Baxter v.*

*Palmigiano*, 425 U.S. 308, 316 (1976)).

The Supreme Court has made clear, however, that the Fifth Amendment is concerned with a compulsion to testify coming from a government source. *See, e.g., Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977)("When a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment and cannot be used against the declarant in a subsequent criminal prosecution."). The Supreme Court has noted the Fifth Amendment is not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion." *Or. v. Elstad*, 470 U.S. 298, 304-05 (1985)(citing *Cal. v. Beheler*, 463 U.S. 1121, 1125 & n.3 (1983)). "Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *Id*. at 305 (quotation and citation omitted). *See also Colorado v. Connelly*, 479 U.S. 157, 165-66 (1986)(There is an "essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant, on the other"; the "most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause."); *United States v. Eide*, 875 F.2d 1429, 1434 (9th Cir. 1989)("[V]olun-tariness is not an issue when the admissions are made to private

individuals"; coercive police activity "is a necessary predicate
to the finding that a confession is not voluntary.")(quoting
*Connelly*, 479 U.S. at 167).


## DISCUSSION

Brown testified at the April 23, 2012, hearing that Brown
learned from a neighbor that Defendant stuck his hand down the
pants of the neighbor's daughter when Defendant was five years
old and he threatened to kill the daughter if she told anyone.
Brown also described many occasions when Defendant became violent
with her before he was 12, including stabbing holes in Brown's
bedroom door, lighting things on fire inside the house, making a
bomb and putting it under her bed, and threatening to burn down
the house.  Brown testified there were times when she locked
herself and her two girls in the bedroom and put a chair in front
of the door because it was not safe being in the house with
Defendant.  Brown stated she feels Defendant is a danger to
himself and to others and "is a very good liar."  Brown made
clear her concern that Defendant would molest other children and
might kill them to keep from getting caught if he were released.

Brown also related she had conversations with Defendant in
July 2008 shortly after Defendant's release on probation during
which Defendant explained he needed to tell her some terrible
things he had done because he needed to know whether he could

"count on her" for support.  Tr. 14, 29.  Brown did not perceive
Defendant felt any compulsion to tell her about these things, but
thought Defendant was trying to enlist her aid in his
supervision.  Brown testified Defendant told her that he was
telling her about his past transgressions because he "need[ed]
forgiveness from God and from [Brown, and] need[ed] to be open
and honest. . . .  And he wanted [Brown] to be able to support
him and still love him."  Tr. 31.  Defendant then made various
admissions to Brown including:

When Defendant was eight years old, he and other boys took
preschool boys into the woods and made them undress and have oral
sex with each other.

In 1999 when Defendant was 17 or 18 years old and his cousin
was 15 years old, they used methamphetamine and decided to have
sex.  When Defendant penetrated his cousin, however, his cousin
objected, but Defendant did not stop.

At some point Defendant gave his daughter muscle relaxers,
undressed her from the waist down, pulled her vagina apart, and
masturbated.

At some time when Defendant was living on the streets in
Portland and using heroin, he stayed at a homeless camp in which
the parents took turns watching the children.  Defendant "rubbed
around" on the children who were young enough to climb up on his
lap.

As noted, Defendant seeks to exclude the testimony of Brown regarding the statements that Defendant made to her in July 2008 about minors who he had molested.  Defendant does not assert Brown was a state actor or agent at the time that he told Brown about his actions.  Instead Defendant contends Brown is not credible and/or his statements to Brown were essentially coerced in violation of the Fifth Amendment because he only told Brown about his molestation of minors when he was going to have to reveal his acts in his polygraph examination.

I.  **Brown's testimony is credible.**

Defendant asserts the Court should not credit Brown's testimony because she is not credible.  Specifically, Defendant contends Brown "hates her son because she views him as being like his biological father, who 'pedaphil[ed] a little girl in a sexual relationship.'"  Def.'s Memo. in Support of Mot. to Exclude at 11.  In support of this argument, Defendant relies on Brown's testimony during cross-examination:

> Q.  Now, who was Richard's dad?
>
> A.  Richard's biological father is Troy Wood.
>
> Q.  Do you recall telling Officer Lundry that Troy Wood sexually abused you when you were 14 years old?
>
> A.  Yes.
>
> Q.  And how old was he then?
>
> A.  He was 19.

Q.    And am I correct that he was your boyfriend?

A.    Yeah, I thought so.

Q.    You were in a sexual relationship with him?

A.    Yeah, if you want to call pedophiling a little girl a sexual relationship.

Q.    So you didn't have consensual relations with him?

A.    I did, but –

Q.    Because of your age –

THE COURT:    Let her finish, please.

THE WITNESS:    I had no boundaries, and no social skills.  I didn't even have a clue that it was not okay.  He loved me.  He was good at this.

Tr. at 36.

The Court notes Brown did not testify she hated Defendant. Instead Brown made clear that she was afraid of Defendant based on his past violent and threatening conduct towards Brown and her daughter.  Brown testified she sought counseling and mental-health treatment for Defendant and tried to get him some help. The record does not reflect Brown testified for any reasons other than she was afraid of Defendant and, based on her history with Defendant, she was concerned he would re-offend if he were released.

Having considered Defendant's credibility arguments in light of the record as a whole and based on the Court's own observations of Brown as a witness, the Court finds Brown to be a

10 - OPINION AND ORDER

credible and reliable witness.

## II.  The Court may consider Defendant's statements to Brown at the Re-sentencing.

As noted, Defendant asserts his statements to Brown were coerced in violation of the Fifth Amendment because he told Brown about his molestation of minors only because he was going to have to reveal those actions in his polygraph examination.  According to Defendant, therefore, his statements to Brown were "fruit of the compelled polygraph" and should be excluded.  Defendant does not cite any cases in which courts have held consideration at sentencing of statements made to a private party under similar circumstances violated the Fifth Amendment.

According to the government, however, there is not any evidence on the record that state officials intended to provide to Brown the results or information gleaned from Defendant's polygraph or that Brown would have discovered the results of the compelled polygraph absent Defendant's conversations with Brown. Instead, the government contends the evidence establishes Defendant told Brown about his prior actions because he wanted to know whether he had her support, he wanted forgiveness from her and from God, and he was hoping to be reassured that Brown would still love him.  Thus, the government argues Defendant's statements were not fruit of the compelled polygraph, and the Court should consider them at sentencing.  The government cites a number of cases from other circuits in which courts have reached

11 - OPINION AND ORDER

the conclusion that the government advocates.

For example, in *United States v. Kimbrough* the Fourth Circuit held questions asked to the defendant by the defendant's mother about the presence of a controlled substance in the basement of the mother's house "without direction by, or even a tacit understanding with, the police officers" did not constitute interrogation and the use of the defendant's answers at trial did not violate the Fifth Amendment even though a police officer was present when the defendant's mother asked the defendant questions and he answered. 477 F.3d 144, 151 (4th Cir. 2007). The court noted "confessions given freely and without compelling state influences are admissible and indeed, desirable." *Id.* at 149-50. "That a statement is 'volunteered' in response to questions or compelling influences emanating from private or other nongovernmental sources does not change this analysis" because the issue is "whether particular actions *by the police*, either express questioning or its functional equivalent, constitute interrogation." *Id.* at 150 (emphasis in original). The "singular focus on *police* conduct is constitutionally mandated by the Fifth Amendment's applicability solely to state action." *Id.* (emphasis in original). The court also relied on the Supreme Court's statement in *Elstad* that the Fifth Amendment is not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion."

*Id.* (quoting *Elstad*, 470 U.S. at 304-05).

Similarly, in *Snethen v. Nix* the defendant refused to talk to the police without an attorney present when the defendant was brought to the police station.  885 F.2d 456, 458 (8th Cir. 1989).  At that point the officers decided to take the defendant back to jail, but the defendant's mother, who was present at the police station, "asked to speak with him before he was taken away."  *Id*. at 458.  The defendant's mother "prodded" him "both in the presence of police and in a private discussion" to describe the crime to the police "so his half-brother would not be punished unjustly."  *Id*. at 459.  After talking with his mother, the defendant gave a statement to the police.  The defendant was convicted of first-degree murder and sentenced to life without parole.  Ultimately the defendant filed a petition for habeas corpus in which he asserted, among other things, that the trial court erred when it considered at trial and at sentencing the defendant's statements made at the police station because those statements were coerced and used in violation of the Fifth Amendment.  The Eighth Circuit held the district court did not err when it denied the defendant's habeas petition.  Specifically, the Eighth Circuit concluded the defendant's assertion that his "coerced" confession was obtained in violation of the Fifth Amendment was "unmeritorious" because "[i]t was 'coercion' by [the defendant's] mother that led to [the

defendant's] inculpatory remarks, not [coercion] by the *police*."
*Id*. at 459-60 (emphasis in original).

In *Van Hook v. Anderson* the defendant refused to speak with
police officers after his arrest without an attorney present.
488 F.3d 411, 414 (6th Cir. 2007).  The police did not question
the defendant further.  The defendant then spoke to his mother.
"[A]t that point, [the defendant] indicated [to police officers
that] he had talked to his mother, and that she had told him just
to tell the truth, and he wanted to make a statement."  *Id*.  The
defendant gave a full confession, which was used against him at
trial.  The defendant was convicted of aggravated murder and
robbery and sentenced to death.  Ultimately the defendant filed a
petition for habeas corpus in which he asserted, among other
things, that his confession was coerced and should not have been
considered at trial or at sentencing.  The Sixth Circuit affirmed
the trial court's denial of the defendant's habeas petition:

> Suspects have no constitutional protection against
> friends or family members who convince them to
> talk with police.  The Constitution clearly
> forbids officials from using their "power of the
> sword" to coerce a suspect into making
> self-incriminating statements; it provides no
> similar protection against third-party cajoling,
> pleading, or threatening.

*Id*. at 421 (citations and quotations omitted).

The Court finds helpful the well-reasoned analyses in
*Kimbrough, Snethen*, and *Van Hook*, particularly with respect to
the principles governing coercion and self-incrimination set out

14 - OPINION AND ORDER

by the Supreme Court.

The Court notes the record in this case does not reflect state officials intended to provide the results or information gleaned from Defendant's polygraph to Brown or that Brown would have discovered the results of the compelled polygraph from officials. The evidence only reflects, as noted earlier, that Defendant told Brown about his prior actions because he wanted to know whether he had her support, he wanted forgiveness from her and from God, and he was hoping to be reassured that Brown would still love him despite those disclosures. In any event, Brown had independent knowledge of Defendant putting his hand down another child's pants when Defendant was five years old and personal knowledge that Defendant previously frightened her, threatened violence, continued to scare her, and caused her to fear for her safety and the safety of others if he was released. The Court concludes Defendant's statements to Brown were not fruit of the compelled polygraph, and, therefore, the Court may and will consider them at sentencing.

Accordingly, the Court denies Defendant's Motion to Exclude the statements that he made to Brown.

**III. The Presentence Report.**

Defendant moves to exclude portions of paragraphs 9, 14, and 44 of the Presentence Report (PSR) as well as paragraph 28 of the Addendum to the PSR on the ground that they contain disclosures

15 - OPINION AND ORDER

compelled as a result of the polygraph in violation of the Fifth

Amendment.  Specifically, Defendant moves to exclude:

¶9:  "whose full-disclosure polygraphs indicate
that he has a sexual attraction to infants
and young children";

¶14  Everything except the first and last
sentences;

¶44  The entirety of the third, fourth, and fifth
paragraphs of the narrative (Beginning with,
"At the time of his post-prison sexual
deviancy evaluation", and ending with,
"pre-school age children as an adult.").

* * *

[T]he Addendum to the PSR referencing under
Additional Information, should be eliminated
beginning with "Paragraph 28:" and ending with
"are attached."

Def.'s Mem. in Support of Mot. to Exclude at 13.

**A.  Paragraphs 9 and 14**

The government does not object to excluding the

portions of paragraphs 9 and 14 of the PSR requested by

Defendant.  Accordingly, the Court grants Defendant's Motion to

Exclude the portions of paragraphs 9 and 14 of the PSR set out

above and directs the Probation Officer to redact those portions

from the PSR.

**B.  Paragraphs 44 and 28**

Defendant also moves to redact portions of paragraph 44

of the PSR and paragraph 28 of the Addendum to the PSR.  The

government objects to redaction of those paragraphs on the ground

16 - OPINION AND ORDER

that they contain critical information that Defendant's probation officer will need in order to fashion an appropriate supervision and treatment plan when Defendant begins his term of supervised release.  The government points out that the information pertains directly to Defendant's background, character, and conduct, and illuminates the danger that Defendant poses on supervised release based on his longstanding and deeply ingrained sexual interest in children.  *See United States v. Bartlett*, 416 F. App'x 508, 511 (6th Cir. 2011)("Whether or not they are true, the allegations of sexual abuse are part of [the defendant's] 'history and characteristics.'  *See* 18 U.S.C. § 3553(a)(1). . . .  [T]hese allegations are part of 'the personal and family data that needs to be provided in the presentence report.' . . .  Indeed, although it might be going too far to say that Rule 32(d)(2)(F) requires that allegations of sexual abuse be included in a defendant's PSR, the Rule certainly suggests that such allegations may be included.").  The government asserts the Court need not redact the information in these paragraphs but only affirm it will not consider the information contained in §§ 44 and 28 at sentencing.

Federal Rule of Criminal Procedure 32(d)(1)(A)-(C) provides a PSR must identify the applicable sentencing guidelines and policy statements, calculate the defendant's offense level and criminal-history category, and list the resulting sentencing

range and the kinds of sentences available.  Federal Rule of

Criminal Procedure 32(d)(1)(D) requires the PSR must identify

"any factor relevant to" the appropriate kind of sentence, to the

appropriate sentence within the applicable sentencing range, and

to any basis for departing from that range.  Finally, Federal

Rule of Criminal Procedure 32(d)(2)(A) and (G) requires the PSR

to contain information about "the defendant's history and

characteristics," including his prior criminal record, his

financial condition, "any circumstances affecting the defendant's

behavior that may be helpful in imposing sentence or in

correctional treatment," and "any other information that the

court requires, including information relevant to the [statutory

sentencing] factors under 18 U.S.C. § 3553(a)."

On the other hand, Federal Rule of Criminal Procedure

32(d)(3) lists three categories of information that must be

excluded from a PSR:

> (A)  any diagnoses that, if disclosed, might
>      seriously disrupt a rehabilitation program;
> (B)  any sources of information obtained upon a
>      promise of  confidentiality; and
> (C)  any other information that, if disclosed,
>      might result in physical or other harm to the
>      defendant or others.

Here the information that Defendant seeks to redact

does not fall within any of the categories of information listed

in Rule 32(d)(3); *i.e.*, information that does not constitute a

diagnosis which, if disclosed, might "seriously disrupt a

18 - OPINION AND ORDER

rehabilitation program" nor that was obtained with a promise of confidentiality.  Defendant was enrolled in the sex-offender treatment program as a condition of his state post-prison supervision, and his progress in treatment was conveyed to his probation officer as part of that supervision.  Finally, in light of the nature of Defendant's counts of conviction, the Court concludes this information is not the sort of information that, if disclosed, "might [of its independent weight] result in physical or other harm to the defendant or others" within the meaning of Rule 32(d)(3)(C).  *See United States v. Elfgeeh*, 377 F. App'x 103, 104-05 (2d Cir. 2010)(holding the defendant's claim that he was "treated in an unduly harsh manner by the Bureau of Prisons" based on information in the PSR did not rise to the level of "harm" under Rule 32).

Nevertheless, the Court acknowledges there are circumstances under which a court should not consider this kind of information at sentencing even though the information is not redacted.  At the same time, 18 U.S.C. § 3661 provides in pertinent part that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  Accordingly, the Ninth Circuit has held a sentencing court "has at its disposal a wide variety of

19 - OPINION AND ORDER

information that could not be considered at trial." *United States v. Petri*, 731 F.3d 833, 838 (9th Cir. 2013).

A court's reliance on certain information, however, can raise constitutional concerns because "if the information is materially false or unreliable, the district court's reliance on it may violate a defendant's due process rights." *Id.* Even when a defendant's due-process rights may be violated by a court's reliance on information in a PSR, Rule 32, nonetheless, "does not require that the objected-to material be stricken," particularly when the information "was fairly presented and did not unfairly prejudice [the defendant]." *United States v. Beatty*, 9 F.3d 686, 689 (8th Cir. 1993)(citations omitted). When a sentencing court makes "a determination that the disputed information [will] not be taken into account in sentencing," Rule 32 "does not require" that the disputed information be stricken from the PSR. *United States v. Robertson*, 901 F.2d 733, 735 (9th Cir. 1990).

Here the Court confirms it cannot and will not consider the information in paragraph 44 of the PSR or paragraph 28 of the Addendum to the PSR because, as the Ninth Circuit has found, doing so would violate Defendant's Fifth Amendment rights. Nevertheless, the Court declines to redact those paragraphs because they contain information that will assist Defendant's probation officer in fashioning an appropriate supervision and treatment plan when Defendant begins his term of supervised

20 - OPINION AND ORDER

release. *See*, e.g., *United States v. Okoronkwo*, 46 F.3d 426, 438 (5th Cir. 1995)(The district court did not err when it failed to redact the PSR when the court "formally stated during sentencing that [it] had not factored the disputed facts into the sentence and ordered a copy of the sentencing transcript to accompany the [PSR] made available to the Bureau of Prisons.").

Accordingly, the Court denies Defendant's Motion to Exclude as to Defendant's request to redact paragraph 44 of the PSR and paragraph 28 of the Addendum to the PSR.

## CONCLUSION

For these reasons, the Court **GRANTS in** part and **DENIES in part** Defendant's Motion (#51) to Exclude Testimony of Sandra Brown and to Strike Material from the Presentence Investigation Report and **DIRECTS** the Probation Officer to redact from the PSR those portions of paragraphs 9 and 14 identified in this Opinion and Order.

IT IS SO ORDERED.

DATED this 15th day of September, 2014.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


21 - OPINION AND ORDER